[Civ. No. 31597. Second Dist., Div. One. Dec. 18, 1967.]

BARNEY R. MORRIS et al., Plaintiffs and Respondents, v. EDWARD K. ZUCKERMAN et al., Defendants and Appellants.

Musick, Peeler & Garrett and Edward J. Riordan for Defendants and Appellants.

Latham & Watkins and Alan N. Halkett for Plaintiffs and Respondents.

LILLIE, J.—In October of 1965 respondents Morris instituted an action against appellants Zuckerman for judicial partition of certain real property owned by the respective parties as tenants in common. Relying on a written agreement (hereinafter referred to as ''the Agreement'') executed by

all concerned on December 14, 1962, the Zuckermans by separate defenses alleged a waiver by Morris and his wife of their right to partition asserting further that they were estopped to seek relief in view of that agreement; by a further defense they asserted that contrary to the Agreement there had been no prior reference of the alleged dispute concerning partition to Engineering Service Corporation (hereinafter referred to as ESCO) for that company's resolution. When respondents persisted in pursuing the remedy they sought, appellants petitioned the court to order arbitration, and moved for a stay of the partition proceeding. Respondents replied to the petition and a hearing was held at which the court considered the opposing interpretations placed on the scope of the Agreement. Finding against appellants' contentions, the court dismissed the petition to compel arbitration and denied the motion for a stay. The appeal is from this order.

The property in controversy is commonly known as the Cove; comprising approximately 23 acres, it is part of a larger parcel, called Parcel 7, some 120 acres in all, located adjacent to the ocean in the Palos Verdes area. Prior to January of 1963, Parcel 7 was owned by a corporation of which the parties to this proceeding were sole stockholders, the principal corporate activity being real estate subdivision and residential construction. Disagreements having arisen among the stockholders, the corporation was liquidated in January of 1963 and the subject Agreement entered into in anticipation of the pending distribution of Parcel 7 to its new owners. After such distribution was finally accomplished, about 54 acres of the parcel belonged to respondents, approximately 53 acres thereof to appellants or corporations owned by them, and the remaining portion (the Cove) to respondents and appellants (each with a one-half interest) as tenants in common.

The Agreement is captioned ''Agreement of Adjacent Owners—Parcel 7.'' The parties' stated purpose is '' [the] working out to their mutual advantage [of the] various problems which may occur in the development of their respective tracts.'' Accordingly, ESCO is designated to make certain determinations, binding on all parties, relating to the granting of such easements, licenses and rights as are necessary for the orderly development of the various properties; the parties further bound themselves to sign and deliver (to the County of Los Angeles) slope and drainage letters upon certification by ESCO that such action would not substantially burden the orderly development of the property to which such letters

pertained. Still other paragraphs of the Agreement relate to coordinated improvement work upon the properties and the sharing of costs incident thereto.

It is then provided in paragraph 14 as follows: ''All determinations herein given by ESCO shall be absolute, final and binding upon all parties hereto. In the event of any disputes or differences between the parties with respect to any provision hereof or any part of the subject matter herein dealt with, such disputes or differences shall be referred to ESCO, whose decision thereon shall likewise be final and binding upon all parties hereto.''

 Respondents contended below that under the Agreement as a whole, including the catch-all provisions of paragraph 14, the parties did not consent that any dispute concerning partition of the Cove be submitted to arbitration. With this contention the trial court agreed, holding that while the Agreement in general was one to arbitrate, it did not include the matter now in dispute, to wit, the claimed right of appellants to compel arbitration of the controversy respecting the Cove's partition.[1] The above determination having been reached without resort to extrinsic evidence, upon appeal the question of the document's interpretation is one of law. (*B.*

---

[1] The court found as follows: ''(1) Petitioners and Respondent are parties to a written agreement dated December 14, 1962, entitled 'Agreement of Adjacent Owners—Parcel 7' (hereinafter referred to as the 'Agreement'), a copy of which is attached as Exhibit 1 to the Answer of defendants Edward K. Zuckerman and Ola Zuckerman, his wife, on file in this action. The Agreement pertains to certain unimproved real property, including the parcel known as 'the Cove' which is the subject of the present litigation.

''(2) Paragraph 14 of the Agreement provides as follows:

'' 'All determinations herein given by ESCO shall be absolute, final and binding upon all parties hereto. In the event of any disputes or differences between the parties with respect to any provision hereof or any part of the subject matter herein dealt with, such disputes or differences shall be referred to ESCO, whose decision thereon shall likewise be final and binding upon all parties hereto.'

''(3) There now exists a controversy and dispute between Respondent Barney R. Morris and Petitioner Edward K. Zuckerman, to wit, whether or not Respondent Barney R. Morris has waived and is estopped from claiming any right to partition the Cove by reason of the provisions of the Agreement.''

From the above findings the following conclusions of law were drawn:

''(1) The Agreement does constitute an arbitration agreement.

''(2) The agreement to arbitrate does not, however, include the matter now in dispute.

''(3) The Petitioners are not entitled to compel arbitration of the alleged disputes or differences with respect to plaintiffs' right to maintain the within action for partition.

''(4) The Petitioners are not entitled to an order staying the within action for partition, or to stay further proceedings herein. . . .''

*L. Metcalf General Contractor, Inc.* v. *Earl Erne, Inc.,* 212 Cal.App.2d 689, 693 [28 Cal.Rptr. 382].)

In defense of the order appealed from, respondents point out that an agreement generally to arbitrate one or more disputes does not necessarily mean that every such difference of opinion must be submitted to arbitration; rather, as noted in *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board, Amalgamated Clothing Workers,* 192 Cal.App.2d 268, 275 [13 Cal. Rptr. 446], "The collective agreement must be read as a whole and the grievance and arbitration procedure viewed in the light of its purpose." ▮ According to respondents, the "purpose" of the agreement was the future development of the property and not the underlying property itself; stated otherwise, such future development (and pertinent language from paragraph 14 is quoted) is assertedly the "subject matter" dealt with in the subject instrument. Left wholly unanswered by this argument, however, is the possible resolution upon arbitration that a partition of the Cove would indeed affect the future development of the property embraced by the Agreement. In view of settled principles, presently to be discussed and applicable to the claims or facts at bar, we are satisfied that the court's conclusions were erroneous and that the order in question must be reversed.

We consider first respondents' contention, inherent in the point immediately above noted, that as a matter of law partition of the Cove would not affect the future development of the property; hence, refusal to proceed to arbitration was proper. However, appellants have consistently urged that such partition would adversely affect the parcels' coordinated development; that being so, it is recognized that the merits of such a controversy are to be settled by the arbitrator and not by the courts. ▮ "General rules relative to arbitration and arbitration agreements and proceedings are provided in section 1280 et seq., Code of Civil Procedure. They reflect the strong legislative policy favoring arbitration. They substantially limit the power of the court over a controversy once it is determined that an agreement to arbitrate exists; thereupon 'an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit' (Code Civ. Proc., § 1281.2). This leaves the entirety of a controversy to the determination of the arbitrator." (*Jordan* v. *Pacific Auto Ins. Co.,* 232 Cal.App.2d 127, 132 [42 Cal.Rptr. 556].)

▮ Too, recent cases establish the principle that the

concept "entirety of a controversy" includes the threshhold issue of arbitrability. Hence it is no longer the law that the question of existence of an agreement to arbitrate and of the scope of the agreement permissible thereunder is one for judicial action in the first instance; such was the holding in *Wetsel* v. *Garibaldi*, 159 Cal.App.2d 4, 7 [323 P.2d 524], which the Supreme Court disapproved in *Posner* v. *Grunwald-Marx, Inc.*, 56 Cal.2d 169 [14 Cal.Rptr. 297, 363 P.2d 313]. ▋ Following *Posner*, the court made these further pronouncements as to the question of arbitrability: "Arbitration is, of course, a matter of contract, and the parties may freely delineate the area of its application. ▋ The court's role, according to the Supreme Court, however, must be strictly limited to a determination of whether the party resisting arbitration agreed to arbitrate. A heavy presumption weighs the scales in favor of arbitrability; an order directing arbitration should be granted 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' [Citation.]" (*O'Malley* v. *Wilshire Oil Co.*, 59 Cal.2d 482, 490-491 [30 Cal.Rptr. 452, 381 P.2d 188].)[2]

▋ Although paragraph 14 declares in pertinent part that ESCO shall be called upon to resolve the matter "In the event of *any* disputes or differences . . . with respect to *any provision* hereof or *any part of the subject matter herein dealt with*," it seems to be argued by respondents that the absence of the magic word "partition" or any express reference thereto should militate against the claim for arbitrability of that specific issue. If that is respondents' argument, it is wholly untenable. ▋ "Any" is, of course, a general term, and it has been held that "where the provision for arbitration is in general terms, the contract will be properly construed as including any dispute between the parties growing out of the contract and its performance. [Citations.]" (*B. L. Metcalf General Contractor, Inc.* v. *Earl Erne, Inc.*, *supra*, 212 Cal.App.2d 689, 694.) ▋ Again, "It is well established that where parties have agreed that all questions

---

[2]Contrary to respondents' suggestion that this "presumption" has been limited to collective bargaining agreements which are subject to federal law (see *Posner* v. *Grunwald-Marx, Inc.*, *supra*, 56 Cal.2d 169), California courts have given a liberal construction to arbitration agreements in non-labor cases: *Loscalzo* v. *Federal Mut. Ins. Co.*, 228 Cal. App.2d 391 [39 Cal.Rptr. 437]; *Solari* v. *Oneto*, 166 Cal.App.2d 145 [333 P.2d 218].

as to rights and obligations under an agreement are subject to arbitration, *all* disputes pertaining to the meaning, interpretation and application of any clause in the agreement, *even those that prima facie appear to be without merit,* are the subject of arbitration." (*Atkins, Kroll & Co.* v. *Broadway Lbr. Co.,* 222 Cal.App.2d 646, 656-657 [35 Cal.Rptr. 385, 12 A.L.R.3d 880].)

█ As here applicable, section 1281.2 of the Code of Civil Procedure provides that the court *shall* order the petitioner and the respondent named to arbitrate a controversy when the petitioner is a party to an arbitration agreement, alleges the existence of a written agreement to arbitrate and further alleges that the respondent refuses to arbitrate such controversy, "if it determines that an agreement to arbitrate the controversy exists. . . ." Since each of the above prerequisites was present in this case, the only issue being as to the portion of the statute above quoted, the trial court had no discretion but to order arbitration; its refusal to do so was reversible error. (*O'Malley* v. *Wilshire Oil Co., supra,* 59 Cal.2d 482.) The same is true of the court's denial of the motion to stay proceedings. (*Tas-T-Nut Co.* v. *Continental Nut Co.,* 125 Cal.App.2d 351 [270 P.2d 43].)

For the foregoing reasons the order is reversed.

Wood, P. J., and Fourt, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 14, 1968.